UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | CIVIL ACTION NO. |
| Plaintiff, | § | 4:20-cv-00222 |
| | § | |
| | § | |
| vs. | § | JUDGE CHARLES ESKRIDGE |
| | § | |
| | § | |
| $37,603.00 in US CURRENCY, | § | |
| | § | |
| Defendant. | § | |

OPINION AND ORDER
GRANTING MOTION FOR DEFAULT JUDGMENT

The motion for default judgment by Plaintiff the United States of America is granted. Dkt 13.

1. Background

Dadrian La-Jon Anderson passed through security inside Houston's George Bush Intercontinental Airport on his way to Los Angeles in August 2019, traveling with a duffle bag and a backpack. Two Houston Police Department officers and a Transportation Security Administration officer saw a pistol in his backpack as it passed through an X-ray screening machine. The HPD officers escorted Anderson and his luggage to a TSA screening room. One of the HPD officers then opened the backpack and found that the semi-automatic pistol was fully loaded and sitting atop a large amount of US currency. A further search found a large bundle of US currency concealed in clothing at the bottom. Anderson initially stated that the money was his, that the pistol belonged to his father, and that he had forgotten putting the gun in his backpack. See generally Dkt 1 at ¶¶ 8–11.

Anderson then consented to speak with a narcotics officer about the contents of his luggage. He stated that a friend had

given him a portion of the money as a birthday gift the week before and told him to go have a good time in Los Angeles. Anderson estimated that he earned between $8,000 and $10,000 by working odd jobs, although he knew $35,000.00 was in the backpack. Anderson also stated that the backpack itself belonged to a friend, while claiming that he couldn't recall which one. See generally id at ¶¶ 11, 13, 15.

The narcotics officer then presented Anderson with a voluntary disclaimer of ownership and interest form. He advised Anderson that he didn't have to sign the form, but that the currency would be forfeited to law enforcement if he did. Anderson signed the form, saying that he understood. See id at ¶ 16.

And so, officers seized the concealed currency, after which a certified Narcotics Canine Officer alerted to it upon inspection. Such a canine is trained to sniff and detect odors including marijuana, heroin, and methamphetamine. Officers also determined that Anderson was previously arrested for possession of marijuana. See generally id at ¶¶ 17–18.

The Government alleges that the Defendant currency was furnished or intended to be furnished in exchange for a controlled substance or listed chemical in violation of the Controlled Substance Act, is proceeds traceable to such an exchange, or was used or intended to be used to facilitate any violation of the Controlled Substances Act. Id at ¶ 19, citing 21 USC § 801, *et seq.*

Anderson submitted a claim to the United States Drug Enforcement Administration contesting administrative forfeiture of the Defendant currency in October 2019. Id at ¶ 4. The Government then filed a complaint for forfeiture *in rem* pursuant to 21 USC § 881(a)(6) in January 2020 and issued a warrant of arrest *in rem* in March 2020. Dkts 1, 3. It also posted notice of the forfeiture on its official internet site from March 3rd to April 1st of 2020. Dkt 6. And it sent a notice of the complaint via certified mail, return receipt requested, to Anderson through his counsel pursuant to Rule G(4)(b) of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions. Dkts 5, 9, 9-1.

The Government then requested entry of default "against all persons and entities, as to the 'Defendant Property' in this case: $37,603.00 in U.S. Currency." Dkt 9 at 1. That request was granted. Dkt 11. The Clerk entered default against Anderson and all other persons and entities with respect to the subject currency. Id at 2; Minute Entry of 01/26/2021.

The Government now moves for default judgment pursuant to Rule 55(b) of the Federal Rules of Civil Procedure. Dkt 13.

### 2. Legal standard

Rule 55 governs default proceedings. This involves sequential steps of default, entry of default, and default judgment. A *default* occurs "when a defendant has failed to plead or otherwise respond to the complaint within the time required by the Federal Rules." *New York Life Insurance Co v Brown*, 84 F3d 137, 141 (5th Cir 1996). An *entry of default* is what the clerk enters when a plaintiff establishes the default by affidavit or otherwise pursuant to Rule 55(a). A *default judgment* can thereafter enter against a defendant upon application by a plaintiff pursuant to Rule 55(b)(2).

The Fifth Circuit instructs that a default judgment is "a drastic remedy, not favored by the Federal Rules and resorted to by courts only in extreme situations." *Sun Bank of Ocala v Pelican Homestead & Savings Association*, 874 F2d 274, 276 (5th Cir 1989) (citations omitted). A plaintiff isn't entitled to a default judgment as a matter of right, even if default has been entered against a defendant. *Lewis v Lynn*, 236 F3d 766, 767 (5th Cir 2001). Rather, a default judgment "must be supported by well-pleaded allegations and must have a sufficient basis in the pleadings." *Wooten v McDonald Transit Associates, Inc*, 788 F3d 490, 498 (5th Cir 2015) (internal quotations omitted). The well-pleaded allegations in the complaint are assumed to be true, except those regarding damages. *Nishimatsu Construction Co v Houston National Bank*, 515 F2d 1200, 1206 (5th Cir 1975).

The decision to enter a judgment by default is discretionary. *Stelax Industries, Ltd v Donahue*, 2004 WL 733844, *11 (ND Tex). "Any doubt as to whether to enter or set aside a default judgment must be resolved in favor of the defaulting party." *John Perez Graphics & Design, LLC v Green Tree Investment*

*Group, Inc*, 2013 WL 1828671, *3 (ND Tex), citing *Lindsey v Prive Corp*, 161 F3d 886, 893 (5th Cir 1998).

### 3. Analysis

No person or entity has filed any answer or otherwise responded to the complaint or request for entry of default. The entry of default was thus deemed appropriate under Rule 55(a). Dkt 11.

The remaining question concerns the propriety of entering default judgment. Three inquiries pertain to that consideration. The first is whether the entry of default judgment is procedurally warranted. The next is whether the substantive merits of the plaintiff's claims as stated in the pleadings provide a sufficient basis for default judgment. The last is whether and what relief the plaintiff should receive. For example, see *Neutral Gray Music v Tri-City Funding & Management LLC*, 2021 WL 1521592, *2 (SD Tex) (collecting cases).

#### a. Procedural requirements

The following factors are pertinent to decision whether default judgment is procedurally appropriate:

- o *First,* whether material issues of fact are in dispute;
- o *Second,* whether there has been substantial prejudice to the plaintiff;
- o *Third,* whether the grounds for default are clearly established;
- o *Fourth,* whether the default was caused by a good-faith mistake or excusable neglect on the defendant's part;
- o *Fifth,* whether default judgment is inappropriately harsh under the circumstances; and
- o *Sixth,* whether the court would think itself obliged to set aside the default upon motion by the defendant.

*Lindsey*, 161 F3d at 893, citing Charles Alan Wright and Arthur R. Miller, *Federal Practice and Procedure* § 2685 (West 2d ed 1983).

*First,* the Government's well-pleaded allegations against the Defendant currency are assumed to be true. See *Nishimatsu*,

515 F2d at 1206. No person or entity has defended or otherwise appeared in this action. This means that no material facts appear to be in dispute. See *Innovative Sports Management, Inc v Martinez*, 2017 WL 6508184, *3 (SD Tex).

*Second,* the Government has naturally experienced substantial prejudice. It served a copy of the complaint (including a notice of forfeiture) to Anderson's counsel by certified mail with return receipt requested. Dkt 9-1. It also published notice of this judicial forfeiture action on an official government internet site (www.forfeiture.gov) for thirty consecutive days. Dkt 6. Neither Anderson nor his counsel nor any other person or entity has responded or defended this action, effectively halting the adversarial process. See *China International Marine Containers, Ltd v Jiangxi Oxygen Plant Co*, 2017 WL 6403886, *3 (SD Tex); *Insurance Co of the West v H&G Contractors, Inc*, 2011 WL 4738197, *3 (SD Tex).

*Third,* the Clerk properly entered default against the Defendant currency pursuant to Rule 55(a) because no person or entity answered or otherwise defended this action. Minute Entry of 01/26/2021. Default judgment is likewise proper because no person or entity has since answered or otherwise defended. See *United States v Padron*, 2017 WL 2060308, *3 (SD Tex); *WB Music Corp v Big Daddy's Entertainment, Inc*, 2005 WL 2662553, *2 (WD Tex).

*Fourth,* nothing suggests that the default by any potential claimant to the Defendant currency has been the product of a good-faith mistake or excusable neglect. See *Insurance Co of the West*, 2011 WL 4738197 at *3; see also *Innovative Sports Management*, 2017 WL 6508184 at *3; *Lindsey*, 161 F3d at 893.

*Fifth,* nothing suggests that it would be too harsh to enter default judgment against the Defendant currency. See *Joe Hand Promotions, Inc v 2 Tacos Bar & Grill, LLC*, 2017 WL 373478, *2 (ND Tex), citing *Lindsey*, 161 F3d at 893; *Insurance Co of the West*, 2011 WL 4738197 at *3. To the contrary, Anderson signed a voluntary disclaimer of ownership and interest form when the Government seized the Defendant currency. Dkt 1 at ¶ 16. And Anderson—along with any other potential claimant—has had over a year to come forward and defend in this action. This

mitigates the perception of any harshness of entering a default judgment. See *Insurance Co of the West*, 2011 WL 4738197 at *3, citing *Lindsey*, 161 F3d at 893.

*Sixth,* nothing suggests that a default judgment would be set aside were any person or entity to later challenge it. See *Insurance Co of the West*, 2011 WL 4738197 at *3 (citations omitted).

Given the foregoing, entry of default judgment pursuant to Rule 55(b) is procedurally appropriate.

### b. Substantive requirements

The Government alleges that the Defendant currency constitutes "moneys furnished or intended to be furnished by any person in exchange for a controlled substance or listed chemical in violation of the Controlled Substances Act." Dkt 1 at ¶ 7. As such, the Government argues that the Defendant currency is subject to forfeiture under 21 USC § 881(a)(6). Ibid.

"In the past, the rule in civil forfeitures was that the United States had the initial burden of demonstrating that probable cause existed to seize the currency." *United States v $92,203.00 in United States Currency*, 537 F3d 504, 508 (5th Cir 2008), citing *United States v $400,000.00 in US Currency*, 831 F2d 84, 87 (5th Cir 1987). And the Fifth Circuit previously defined *probable cause* as "reasonable ground for belief of guilt, supported by less than prima facie proof but more than mere suspicion." *United States v $38,600.00 in US Currency*, 784 F2d 694, 697 (5th Cir 1986), quoting *United States v $364,960 in US Currency*, 661 F2d 319, 323 (5th Cir 1981). Once the Government met its burden, the burden then shifted to the claimant to prove a defense by a preponderance of the evidence. *$92,203.00 in United States Currency*, 537 F3d at 508, citing *United States v One Hundred Twenty-Four Thousand Eight Hundred Thirteen Dollars in US Currency*, 53 F3d 108, 111 (5th Cir 1995, *per curiam*).

But Congress subsequently enacted the Civil Asset Forfeiture Reform Act of 2000, which provides in relevant part that "the burden of proof is on the Government to establish, by a *preponderance of the evidence*, that the property is subject to forfeiture." 18 USC § 983(c)(1) (emphasis added). "The burden of showing something by a preponderance of the evidence, the most common standard in the civil law, simply requires the trier

of fact to believe that the existence of a fact is more probable than its nonexistence before [he] may find in favor of the party who has the burden to persuade the [judge] of the fact's existence." *Concrete Pipe & Products of California, Inc v Construction Laborers Pension Trust for Southern California*, 508 US 602, 622 (1993), quoting *In re Winship*, 397 US 358, 371–72 (1970) (Harlan, J, concurring) (alterations in original). The Government may "use evidence gathered after the filing of a complaint for forfeiture to establish, by a preponderance of the evidence, that property is subject to forfeiture." 18 USC § 983(c)(2).

But "if the Government's theory of forfeiture is that the property was used to commit or facilitate the commission of a criminal offense, or was involved in the commission of a criminal offense," then it must "establish that there was a *substantial connection* between the property and the offense." 18 USC § 983(c)(3) (emphasis added). Whether the facts presented are sufficient to constitute a substantial connection "is a mixed question of law and fact." *United States v $124,700 in US Currency*, 458 F3d 822, 825 (5th Cir 2006) (collecting cases). A substantial connection can be proven with direct or circumstantial evidence. See *United States v 2004 Ferrari 360 Modeno*, 544 F Appx 545 (5th Cir 2013, *per curiam*); see also *United States v Real Property*, 2018 US Dist LEXIS 232674, *33 (WD Tex), citing *United States v 3148 Woodlawn Drive, Groves, Texas*, 2012 WL 966117, *6 (ED Tex). But the Fifth Circuit holds that Congress, by enacting CAFRA, "intended to end the practice of reliance on hearsay in civil forfeiture decisions." *$92,203.00 in United States Currency*, 537 F3d at 510.

Once the Government meets its burden, the claimant has the burden of proving that he or she "is an innocent owner by a preponderance of the evidence." 18 USC § 983(d)(1).

The Government articulates five arguments and supporting facts to establish a substantial connection between the Defendant currency and illegal drug activity.

*First,* Anderson was travelling with a very large amount of currency. This strongly suggests a connection to a crime related to controlled substances. See *United States v $18,592.00 of $35,037.00 in US Currency*, 2013 WL 3095519, *3 (ND Tex), citing

*United States v $159,880.00 in US Currency, More or Less*, 387 F Supp 2d 1000, 1013 (SD Iowa 2005), in turn citing *United States v $84,615 in US Currency*, 379 F3d 496, 501–02 (8th Cir 2004).

*Second,* Anderson concealed a portion of the Defendant currency. This further suggests a connection between it and a crime related to controlled substances. See *United States v $238,500.00 in United States Currency*, 2015 WL 12551092, *5 (SD Tex); see also *United States v $117,920.00 in US Currency,* 413 F3d 826, 829 (8th Cir 2005); *$18,592.00 of $35,037.00 in US Currency*, 2013 WL 3095519 at *3, citing *United States v $242,484.00*, 389 F3d 1149, 1161 (11th Cir 2004, *en banc*).

*Third,* Anderson didn't link the Defendant currency to any legitimate source of income. This supports an inference that it's connected to a crime related to controlled substances. See *One 1987 Mercedes 560 SEL*, 919 F2d at 332–33; *United States v $48,800, More or Less, in US Currency*, 2018 WL 1404408, *5 (WD Tex), citing *United States v $369,980 in US Currency*, 214 F Appx 432, 434 (5th Cir 2007, *per curiam*).

*Fourth,* a certified Narcotics Canine Officer alerted to the Defendant currency after officers seized it. This also supports an inference that it's associated with a crime related to controlled substances. See *$18,592.00 of $35,037.00 in US Currency*, 2013 WL 3095519 at *4, citing *$369,980 in US Currency,* 214 F Appx at 434.

*Fifth,* Anderson has a criminal history of drug possession. Dkt 1 at ¶ 18. This supports a connection between the Defendant currency and a crime related to controlled substances.

The Government has shown by direct and circumstantial evidence that a substantial connection exists between the Defendant currency and a crime related to controlled substances. The burden thus shifts to Anderson to prove by a preponderance of the evidence that the money came from an independent source unrelated to drugs. But Anderson hasn't responded. This means that the showing by a preponderance of the evidence that the property is subject to forfeiture remains unchallenged.

The claims as stated in the pleadings provide a sufficient basis on the merits for default judgment. Entry of default judgment pursuant to Rule 55(b) is thus substantively appropriate.

### c. Appropriate remedies

Rule 54(c) provides that "default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." This means that "the relief prayed for in a complaint defines the scope of relief available on default judgment." *United States v $19,840.00 in US Currency More Or Less*, 552 F Supp 2d 632, 637 (WD Tex 2008).

The Government requests here the entry of default judgment and a final judgment of forfeiture in its favor with respect to the Defendant $37,603.00 in US currency. Dkt 13 at 3. This accords with the relief specified in the complaint. Dkt 1.

### 4. Conclusion

The requested relief is appropriate given the evidence presented by the Government, the sufficiency of the proceedings in this action, and the failure of any person or entity to assert otherwise. As such, default judgment is appropriate. See *United States v $44,860.00 in US Currency*, 2010 WL 157538, *3 (ND Tex).

The motion by Plaintiff the United States of America for default against $37,603.00 in US currency is GRANTED. Dkt 13.

The $37,603.00 in US currency seized on or about August 22, 2019 is FORFEITED to the United States of America pursuant to 21 USC § 881(a)(6). All right, title, and interest in said currency and property is vested in the United States of America.

This is a FINAL JUDGMENT.

SO ORDERED.

Signed on July 16, 2021, at Houston, Texas.

Hon. Charles Eskridge
United States District Judge